IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JORDAN GRANT,** | * | |
|     **Plaintiff,** | * | |
| **v.** | * | Civ. No. DLB-23-0313 |
| **STATE OF MARYLAND,** *et al.*, | * | |
|     **Defendants.** | * | |

**MEMORANDUM OPINION**

Jordan Grant, who is self-represented, alleges that members of the Prince George's County Police Department committed various intentional torts against him. Grant names as defendants the State of Maryland; Prince George's County; the Prince George's County Police Department; Chief of Police Malik Aziz, in his official capacity; as well as five other officers in both their official and individual capacities: Officer Charles Cooper, Officer Ryan Roch, Officer Antonio Bond, Lieutenant Loronda Terrell, and an unnamed officer referred to as Sergeant John Doe. With Grant's consent, the Court dismissed the claims against Roch, Bond, and Terrell. As of today, Grant has properly served the State, the Police Department, Aziz, and Cooper. The Police Department, Aziz, and Cooper filed answers. ECF 35 & 60. The State has moved to dismiss the claims against it for want of jurisdiction. Grant has not opposed the State's motion. The Court grants the motion for the following reasons.

**I.     Background[1]**

Early in the morning on February 5, 2020, Grant was sitting in a family member's car in front of his house in Lanham, Maryland, talking on the phone and listening to music. ECF 30, ¶ 15.

---

[1] The Court accepts all well-pleaded facts as true. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).

At about 1:30 a.m., Officer Cooper drove past Grant, then backed up, and stopped his car. *Id.* ¶¶ 15–16. The officer got out of his car, approached Grant, and began questioning him. *Id.* ¶ 16–17.

From inside the house, Grant's brother Jonah heard Cooper and alerted his and Grant's parents, Nicola Grant and Paul Grant Bey. *See id.* ¶ 18. Grant's parents and brother stepped outside to see what was happening. *Id.* ¶ 19. When they realized what they heard was an officer loudly questioning Grant, they stayed to watch. *See id.* ¶ 20. Grant's sister briefly stepped outside, too. *Id.*

Cooper claimed he smelled marijuana and ordered Grant to exit the vehicle. *Id.* ¶ 21. Grant complied. *Id.* Neither Grant nor his family members smelled marijuana in the air, on Grant himself, or in the car. *Id.* ¶ 22. Around this time, Grant gave Cooper his wallet, driver's license, and car keys. *Id.* ¶ 23.

After Grant exited his car, Cooper forcibly pushed Grant against it and kicked open Grant's legs. *Id.* The officer then searched Grant's pockets, despite already having his wallet, license, and keys. *Id.* During the search, Cooper roughly fondled and squeezed Grant's genitals. *Id.* ¶ 24. Grant yelled in pain and complained about the officer's conduct. *Id.* Grant was visibly in pain. *Id.* ¶ 25. Grant's parents and brother stood by, witnessing this interaction, *id.* ¶ 27, and later noted that Grant did not yell or complain until Cooper squeezed Grant's genitals. *Id.* ¶ 44. Despite the commotion, no other witnesses came to the scene. *Id.* ¶ 52.

After searching Grant, Cooper said he needed to search the car. *Id.* ¶ 30. Grant's parents asked why, and Cooper said that he needed to search for marijuana. *Id.* ¶ 31. Cooper then handcuffed Grant. *Id.* ¶ 32. Grant's parents asked if Grant was under arrest. *Id.* Cooper stated Grant was not; he would be released if nothing was found. *Id.* ¶ 33. Cooper called for backup to search

the car. *Id.* ¶ 34. Once other officers arrived, Cooper searched Grant's car. *Id.* Grant's parents stayed outside, watching the search. *Id.* ¶ 35. But still, no other witnesses came to the scene. *Id.* ¶ 52. While Grant was handcuffed, he did not resist or disobey orders. *Id.* ¶ 46. No officers had to order Grant to comply, *id.*, nor did any officer order Grant to stop resisting or tell him that he was disturbing the peace, *see id.* ¶¶ 47–48.

Cooper searched Grant's car for several minutes but found nothing. *Id.* ¶ 36. Yet the officers arrested Grant. *Id.* ¶ 38. When Grant's parents asked why their son was being arrested, Cooper and the other officers gave no reason. *Id.* ¶ 39. The officers detained Grant for more than two hours before taking him to jail. *Id.* ¶ 60.

The officers detained Grant in jail for several hours. *Id.* ¶ 40. Grant alleges that in their arrest report, the officers falsely wrote that Grant had caused a disturbance that drew people to the scene. *See id.* ¶¶ 41, 44. Grant was charged with disorderly conduct, failing to obey a law enforcement officer's reasonable order to stop resisting, and intentionally resisting lawful arrest. *Id.* ¶ 42. Grant eventually appeared before a judge, and the judge dismissed the case. *Id.* ¶ 62.

Grant suffered mental and emotional injuries from the officers' actions. *Id.* ¶ 63. He also suffered from lingering physical pain. *Id.* Specifically, Grant experienced pain in his back, legs, and genitals for weeks after the incident. *Id.* ¶ 29.

Grant filed his complaint on February 3, 2023. ECF 1. On September 18, 2023, he filed an amended complaint, alleging nine claims under 42 U.S.C. § 1983 against all defendants: (Count I) assault, battery, and excessive force in violation of the Fourteenth Amendment; (Count II) unlawful search and seizures in violation of the Fourth and Fourteenth Amendments; (Count III) unlawful detention, false arrest, and kidnapping in violation of the Fourth and Fourteenth Amendments; (Count IV) malicious prosecution in violation of the Fourteenth

3

Amendment; (Count V) failure to train and supervise in violation of "Plaintiff's constitutional rights," ECF 30, at 12–13; (Count VI)[2] harassment in violation of the plaintiff's "constitutional rights," *id.* at 14; (Count VII) fraud; (Count VIII) an unconstitutional custom, pattern, or practice of unlawful seizure, excessive use of force, and improper use of police powers in violation of the Fourth and Fourteenth Amendments; and (Count IX) an unconstitutional custom, pattern, or practice of failure to train, supervise, and discipline in violation of the Fourth and Fourteenth Amendments. *See* ECF 30. On December 4, 2024, the State moved to dismiss the amended complaint. ECF 62. Grant has not opposed the motion. A hearing is not necessary. *See* Loc. R. 105.6.

## II.     Standard of Review

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.* Where, as here, defendants contest subject-matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]"

---

[2] The amended complaint mistakenly names this count as "Count V," but that is the previous count. *See* ECF 30, at 14. The amended complaint's subsequent counts have the same issue of being one number lower than they should be. *See id.* at 15–16, 19. This opinion adjusts the count numbers accordingly.

*Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted). Dismissal for lack of subject-matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)); *see Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) ("In pursuing a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017))).

**III.   Discussion**

The State asserts a facial challenge to the Court's subject-matter jurisdiction over Grant's claims, arguing that it is immune from suit in federal court under the Eleventh Amendment to the U.S. Constitution. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject-matter jurisdiction).

The State is correct. Under the Eleventh Amendment, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

In addition to consent, there are two other exceptions to Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S.

431, 437 (2004)). The first exception, abrogation by Congress, does not apply here. Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The second exception also does not apply because Grant does not seek prospective injunctive relief.

**IV.    Conclusion**

For these reasons, the State of Maryland's Motion to Dismiss, ECF 62, is granted for lack of subject-matter jurisdiction. A separate order will issue.

Date: May 15, 2025                                                    /s/
                                                                                   Deborah L. Boardman
                                                                                   United States District Judge